**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **U.S. SPECIALTY INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 4:24-cv-00619** |
| | § | |
| **BRIDGELINK ENGINEERING, LLC, CORD H. JOHNSON and COLE W. JOHNSON,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
**INDEMNITY, EQUITABLE, AND OTHER RELIEF**

Plaintiff U.S. Specialty Insurance Company (the "**Surety**" or "**USSIC**") files its Original Complaint for Indemnity, Equitable, and Other Relief against Bridgelink Engineering, LLC, Cord H. Johnson and Cole W. Johnson ("**Indemnitors**") and shows:

## I. PARTIES

1. Plaintiff U.S. Specialty Insurance Company is a Texas corporation.

2. Defendant Bridgelink Engineering, LLC is a Delaware limited liability company with its principal place of business in Midland, Texas ("**Bridgelink**"). Bridgelink's most recent Public Information Report lists Cole W. Johnson as the Chief Executive Officer and President.[1] Cole W. Johnson is an individual citizen and resident of Texas who resides at 777 Main Street, Suite 2800 Fort Worth, Texas 76102. Bridgelink may be served with process by serving Cole W. Johnson at 777 Main Street, Suite 2800 Fort Worth, Texas 76102 or wherever he may be found.

[1] See Bridgelink's Public Information Report dated December 31, 2023 attached as Exhibit 1.

3. Cord H. Johnson, an individual, is a citizen and resident of Texas, who may be served with process at 15105 Stragazer Drive, Aledo, Texas 76008-1606 or wherever he may be found.

4. Cole W. Johnson, an individual, is a citizen and resident of Texas, who may be served with process at 777 Main Street, Suite 2800 Fort Worth, Texas 76102 or wherever he may be found.

## II.   VENUE

5. This Court possesses original jurisdiction over USSIC's claims under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

6. This Court possesses the power to declare the respective rights and other legal relations of the parties as requested herein under 28 U.S.C. § 2201(a).

7. This Court possesses the power to grant the injunctive relief requested herein under Rule 65 of the Federal Rules of Civil Procedure.

8. Venue is proper in the United States District Court for the Northern District of Texas, Fort Worth Division, under 28 U.S.C. § 124(b)(2) and 28 U.S.C. § 1391(b)(1) because one or more of the defendants reside in the Northern District of Texas, Fort Worth Division, and all of the defendants are residents/citizens of the State of Texas. Moreover, under a general agreement of indemnity, the defendants irrevocably and unconditionally submitted to the exclusive jurisdiction of this Court, and the defendants have waived any and all rights to object to such venue or jurisdiction.

### III.    FACTUAL BACKGROUND

A.    THE AGREEMENT OF INDEMNITY

9.    On or about September 20, 2022, Indemnitors contractually agreed to protect USSIC from loss by executing a General Indemnity Agreement ("**Indemnity Agreement**") in exchange for USSIC issuing a bond for the benefit of Indemnitors.[2] The Indemnity Agreement outlines specific terms and conditions that both parties were required to adhere to, ensuring that USSIC was indemnified against any potential claims or losses arising under the Bond.

10.    Paragraph 2 of the Indemnity Agreement defines "Indemnity" as the following:

> In consideration of the execution and delivery of the Surety of a Bond or Bonds on behalf of the Principal, either prior to, in connection with or subsequent to the Agreement [Indemnitors] agrees to exonerate, indemnify and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature (including, but not limited to, interest, court costs and counsel fees) which arise by reason of, or in consequence of, the execution by the Surety of any Bond on behalf of the Principal and whether or not the Surety shall have paid any sums in partial or complete payment thereof, including but not limited: sums paid including interest, liabilities incurred in settlement of claims, expenses paid or incurred in connection with claims, suits, or judgments under such Bonds; expenses paid or incurred in enforcing the terms of this Agreement; expenses paid or incurred in procuring or attempting to procure release from liability under its Bond by Surety; expenses incurred in recovering attempting to recover losses or expenses paid or incurred; attorneys fees and all legal or professional services; adjustment of claims; premiums on Bonds issued by Surety on behalf of the Principal; or monies advanced or loaned…
>
> F. The Surety shall have the exclusive right for itself and for the [Indemnitors] to decide and determine whether any claim, demand, suit or judgement shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and the Surety's determination shall be final, conclusive and binding upon the [Indemnitors].

---

[2] Indemnity Agreement, attached as Exhibit 2.

> G. If the [Indemnitors] desire that the Surety litigate a claim or demand, or defend suit, or appeal from such judgment, they shall deposit with the company, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment rendered, or which might be rendered, against Surety together with interest, costs, and attorneys' fees.[3]

11. Under Paragraph 3 of the Indemnity Agreement, Indemnitors agreed to post collateral upon demand in an amount sufficient to protect USSIC from any and all loss exposure under the Bonds:

> If a claim or demand is made against Surety, whether disputed or not, or Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, the Undersigned shall deposit with Surety cash or other property acceptable to Surety, as collateral security, in a sufficient amount to protect Surety with respect to such claim or potential claims and any expense or attorneys' fees. Such collateral may be held or utilized by Surety until it has received evidence of its complete exoneration and discharge from such claim or potential claims, and until it has been fully reimbursed for all losses, expense, attorneys' fees and unpaid premiums. If said collateral, or collateral security previously deposited with Surety, is deemed insufficient by Surety, the Undersigned agrees to deposit additional or substitute collateral in an amount and type acceptable to Surety. This may include the Surety's demand for cash collateral in substitution for trust deed collateral.[4]

**B.    BOND ISSUED BY USSIC**

12. In reliance upon its rights under the Indemnity Agreement, USSIC, as surety, issued Release of Lien Bond No. 100685835 for the benefit of Bridgelink recorded in Bosque County, Texas (the "**Bond**").[5] The Bond is a statutory bond governed by Section 53 of the Texas Property Code. According to Section 43.237 of the Property Code the Surety's obligations under the Bond include payment of lien claimants to the extent the lien is determined to be valid.

---

[3] Exhibit 2 at ¶ 2.
[4] Exhibit 2 at ¶ 3.
[5] See the Bond is attached as Exhibit 3.

13. Bridgelink subcontracted engineering services to Mining Controls, LLC d/b/a Elgin Power Solutions ("**EPS**") for the Dileo Solar Substation project located in Bosque County, Texas (the "**Project**").[6] EPS recorded an Affidavit for Mechanic's and Materialman's Lien in Bosque County Real Property Records on July 15, 2022; recorded a First Amended Affidavit for Mechanic's and Materialman's Lien on August 11, 2022; and recorded a Second Amended Affidavit for Mechanic's and Materialman's Lien on September 1, 2022 under Instrument No. 2022-03521 in the amount of $319,258.16 (collectively, the "**Lien**"). Bridgelink filed suit against EPS in Bosque County on September 6, 2022 in the case styled *Bridgelink Engineering, LLC v. Mining Controls, LLC d/b/a Elgin Power Solutions*; Cause No. CV22-232; in the 220th District Court, Bosque County, Texas (the "**Lawsuit**") alleging EPS defaulted on its subcontract requesting damages in excess of $1,000,000.00.

14. After the filing of the Lawsuit, Bridgelink obtained the Bond from USSIC in the penal amount of $478,887.24[7] and had the Bond recorded in Bosque County on September 23, 2022. On December 7, 2022, EPS filed a First Amended Answer and Counterclaim asserting a claim against Bridgelink and USSIC under the Bond to recover the full amount of the Lien, along with all costs and attorneys' fees incurred in pursuit of its claim.

C. **INDEMNITOR HAS FAILED AND REFUSED TO INDEMNIFY AND POST COLLATERAL UPON DEMAND**

15. The Surety issued a written demand on the Indemnitor dated April 25, 2024 to: (a) post collateral security with the USSIC in the amount of $500,000.00, representing the current exposure of USSIC (this amount includes fees and costs) based on the claim asserted by EPS

---

[6] See the Subcontract between Bridgelink and EPS attached as <u>Exhibit 4</u>.
[7] § 53.172(3) Tex. Prop. Code requires the penal limit of the Bond to be 1½ times the amount of the Lien ($319,258.16 x 1.5 = $478,887,24).

against the Bond (b) procure the full and complete release and/or discharge of USSIC from the Bond and all liability or potential liability in connection with the Bond.[8] Despite written demand, the Indemnitor failed to indemnify USSIC and provide the requested collateral as required by the Indemnity Agreement.

16. The Surety fears that the Indemnitor may deplete assets to a point where there will not be sufficient collateral to protect the Surety and will leave the Surety exposed under the Bond in an amount no less than $478,887.24. This amount is the face amount of the undischarged and potential liability of the Surety under the Bond. Without the collateral to secure the Surety from such loss, the Surety will suffer irreparable harm under the Bond with no recourse for reimbursement from the Indemnitor. The Surety seeks and is entitled to injunctive relief and specific performance of the Indemnitor's obligation to post collateral under the Indemnity Agreement.

17. The Surety requests that this Court issue a preliminary and permanent injunction compelling the Indemnitor to post collateral in the amount of $500,000.00, representing the current exposure of USSIC (this amount includes fees and costs) based on the claim asserted by EPS against the Bond. Without injunctive relief, the Surety will suffer irreparable harm because of the likelihood of the Indemnitor dissipating assets. The disposition of assets will reduce the amount of collateral available to the Surety and prevent Indemnitor from being able to fulfill their obligations to provide collateral sufficient to protect the Surety from all undischarged liability.

---

[8] See Collateral Demand dated April 24, 2025, attached as <u>Exhibit 5</u>.

## IV.   CLAIMS FOR RELIEF

### A.   BREACH OF INDEMNITY AGREEMENT

18. The Surety restates the allegations contained in the above paragraphs of the Complaint as if fully set forth herein.

19. Indemnitors executed the Indemnity Agreement under which they agreed to indemnify the Surety against any liability or loss in connection with the Bond.

20. Indemnitors failed to make payment or otherwise indemnify the Surety for its losses under the terms of the Indemnity Agreement, which constitutes a breach of the Indemnity Agreement.

21. As a direct and proximate result of Indemnitors' breach of the Indemnity Agreement, the Surety has incurred and will continue to incur losses, costs, and expenses, including attorneys' fees and costs associated with the prosecution of this action.

22. The Surety is entitled to the entry of judgment against Indemnitors in an amount sufficient to fully indemnify and hold the Surety harmless from and against all loss under the terms of the Indemnity Agreement.

### B.   COMMON LAW INDEMNITY

23. The Surety restates the allegations contained in the above paragraphs of the Complaint as if fully set forth herein.

24. USSIC has been called upon as surety for Indemnitors' alleged defaults under the Bond.

25. Indemnitors benefitted from the Surety's posting of the Bond, as Indemnitor could not have performed without the Bond.

26. Under the theories of common law indemnity, unjust enrichment, and restitution, the Surety is entitled to payment from Indemnitor for all of the Surety's loss and expense resulting from issuance of the Bond.

## C. SPECIFIC PERFORMANCE OF COLLATERAL OBLIGATIONS OF INDEMNITOR

27. The Surety restates the allegations contained in the above paragraphs of the Complaint as if fully set forth herein.

28. Under Paragraph 3 of the Indemnity Agreement, the Indemnitor is obligated to deposit collateral in a form acceptable to the Surety in an amount sufficient to protect the Surety against exposure from all undischarged liability on the Bond.

29. Pursuant to Paragraph 3 of the Indemnity Agreement, the Surety has demanded that the Indemnitor deposit collateral in the amount of $500,000.00 representing the current exposure of USSIC, including attorneys' fees and costs, based on the claim asserted by EPS against the Bond.

30. Despite the Surety's demand, the Indemnitors have failed and/or refused to deposit any collateral with the Surety. The failure of the Indemnitors to deposit the demanded collateral with the Surety constitutes a breach of the Indemnity Agreement.

31. If the requested relief is not granted, the Indemnitors may sell, transfer, dispose, lien, secure, or otherwise divert asserts, thereby preventing the Surety's access to those assets for discharging the Indemnitor's obligations to indemnify the Surety.

32. The Surety is therefore entitled to the entry of a judgment compelling the Indemnitor to specifically perform its duty to deposit collateral with the Surety in the minimum amount of $500,000.00.

**D.    EXONERATION**

33.    The Surety restates the allegations contained in the above paragraphs of the Complaint as if fully set forth herein.

34.    The Indemnitors are liable to the Surety under the Indemnity Agreement for all amounts necessary to exonerate the Surety from liability existing and/or asserted against it.

**E.    COLLATERALIZATION/QUIA TIMET**

35.    The Surety restates the allegations contained in the above paragraphs of the Complaint as if fully set forth herein.

36.    The Indemnitors agreed to procure the full and complete discharge of the Surety under the Bond and/or to provide collateral in an amount of money sufficient to satisfy all undischarged and potential liability under the Bond and any fees and expenses incurred in order to secure the compliance of the Indemnitors and the enforcement of the Indemnity Agreement.

37.    The Indemnitors have refused to honor or perform their obligations under the Indemnity Agreement to provide collateral sufficient to protect the Surety, despite written demand from the Surety.

38.    The Surety is entitled to receive collateral security sufficient to discharge any and all potential liability on the Bond and all fees and expenses incurred in securing compliance with the Indemnity Agreement.

**F.    MOTION FOR PRELIMINARY INJUNCTION**

39.    The Surety restates the allegations contained in the above paragraphs of the Complaint as if fully set forth herein.

40.    The Surety hereby moves for a Preliminary Injunction ordering the Indemnitors to immediately deposit cash collateral in the amount of $500,000.00 with the Surety. The injunctive

relief is necessary to preserve the status quo and to prevent significant, imminent, and irreparable harm to the Surety, as the Surety will suffer such harm if it does receive the protection it has a right to receive under the Indemnity Agreement in the form of cash collateral.

41. The Surety will also suffer immediate and irreparable injury if the Indemnitors is not immediately restrained from destroying and/or hiding the Records, and the Indemnitors has a contractual obligation to provide access to the Records. No harm will occur to the Indemnitors if this Court orders it to abide by its contractual obligation and provide reasonable access to the Surety.

42. The Surety will likely prevail on the merits and has no adequate remedy at law. Injunctive relief will not adversely affect the public interest, and the Surety is willing to post a bond in the amount the Court deems appropriate.

## V. CONDITIONS PRECEDENT

43. All conditions precedent to recovery by the Surety from the Indemnitors have occurred or have been performed.

## VI. RECOVERY OF ATTORNEYS' FEES

44. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

45. The Indemnity Agreement entitles the Surety to recover its attorneys' fees and costs arising from Indemnitors' breach of the Indemnity Agreement. The acts described in this Petition forced the Surety to retain legal counsel pursue recovery for damages caused by Indemnitors' acts and/or omissions. Accordingly, the Surety seeks reimbursement for its reasonable and necessary attorneys' fees and costs.

46. Additionally, and alternatively, the Surety is entitled to recovery of attorneys' fees under Section 38.001 *et. seq.* of the Texas Civil Practice and Remedies Code.

## VII.   INTEREST

47. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

48. The Surety is also entitled to recover prejudgment interest against Indemnitors at the highest rate allowed by law. Further, if the Surety recovers on this action, it is entitled to post-judgment interest at the highest rate allowed by law, from the date of judgment until such judgment is satisfied.

## VIII.   REQUEST FOR RELIEF

For these reasons, Plaintiff U.S. Specialty Insurance Company respectfully requests that Indemnitors be cited to appear and answer herein; and that the Surety be granted judgment against Indemnitors for the following:

(a) Judgment compelling Indemnitors to specifically perform their obligation to deposit collateral in the amount of $500,000.00 representing the current exposure of USSIC (this amount includes fees and costs) based on the claim asserted by EPS against the Bond with USSIC under the Indemnity Agreement;

(b) Judgment compelling the Indemnitors execute a full and complete release and/or discharge of USSIC from the Bond and all liability or potential liability in connection with the Bond;

(c) Preliminary injunction mandating (i) that the Indemnitors immediately deposit cash collateral with the Surety in the amount of $500,000.00; and (ii) that the Indemnitors provide the Surety with a full and complete release and/or discharge of USSIC from the Bond and all liability or potential liability in connection with the Bond;

(d) Judgment against Indemnitors for the Surety's reasonable attorneys' fees and expenses incurred by the Surety to protect/pursue its rights and interest under the Bond and the Indemnity Agreement;

(e) Judgment against Indemnitors for all costs of court;

(f) Judgment against Indemnitors for prejudgment and post judgment interest at the highest rate allowed by law; and

(g) For such further relief, both general and specific, as may be deemed appropriate by this Court.

DATED: July 2, 2024.

Respectfully Submitted,

*/s/ Gregory M. Weinstein*
GREGORY M. WEINSTEIN
State Bar No. 16027020
TAYLOR FELDT
State Bar No. 24115771
**WEINSTEIN RADCLIFF PIPKIN LLP**
8350 N. Central Expressway, Suite 1550
Dallas, Texas 75206
Telephone:  214.865.6126
Facsimile:  214.865.6140
Email:  gweinstein@weinrad.com
tfeldt@weinrad.com

**ATTORNEYS FOR PLAINTIFF U.S. SPECIALTY INSURANCE COMPANY**